**STATE OF OHIO ENVIRONMENTAL PROTECTION AGENCY,**
**Plaintiff,**

v.

**UNITED STATES of America**
**DEPARTMENT OF LABOR,**
**et al., Defendants.**

**No. C2–00–1157.**

United States District Court,
S.D. Ohio,
Eastern Division.

Nov. 14, 2000.

523, 535 (6th Cir.1998).

Jack Wilson Decker, Richard Coglianese, Ohio Attorney General's Office, Columbus, for plaintiff.

E. Dennis Muchnicki, Dublin, Mark Quinlivan, Senior Counsel, U.S. Dept. of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

SARGUS, District Judge.

This matter is before the Court upon motion of the Plaintiff State of Ohio Environmental Protection Agency ("State of Ohio") for a preliminary injunction. (Doc. # 2). After the filing of Plaintiff's motion, Plaintiff further moved to consolidate the preliminary injunction hearing with the trial on the merits of this action. (Doc. # 4). The Motion being unopposed, this Court orally granted the same at a hearing held on November 6, 2000. Further, on November 3, 2000, the parties reached a stipulation of fact which essentially consists of the record compiled before the Department of Labor in the course of the administrative proceeding described below. The stipulated facts comprise the entire record before this Court.

Upon consideration of the briefs submitted by the parties, a review of the record submitted by agreement, as well as arguments presented on November 6, 2000, the Court orally ruled from the bench that the Plaintiff is conditionally entitled to the injunctive relief requested in Count III of the Complaint, unless within thirty (30) days from the date of this Court's order, the United States Department of Labor intervenes in the administrative process now pending before the United States Department of Labor and seeks relief against the State of Ohio as preliminarily ordered by Administrative Law Judge Thomas F. Phalen, Jr., United States Department of Labor, on October 3, 2000. For reasons more fully described below, the Court finds that the Plaintiff is further entitled to declaratory relief on Count I of its Complaint.

### I.

On July 28, 1998, Defendant Paul Jayco, who was employed by the Ohio Environmental Protection Agency in a position known as Environmental Specialist II, filed a complaint for discrimination with the Occupational Safety and Health Administration ("OSHA"). In the summer of

1997, Jayco became the site coordinator with regard to an environmental investigation at the River Valley Schools in Marion, Ohio. The schools had been constructed on a site formerly used by the U.S. Department of Defense and its predecessor agencies during World War II.

Jayco was integrally involved in an investigation to determine whether the incidence of leukemia was higher in and around Marion, Ohio as a result of potential carcinogens deposited on or near the school grounds. While a number of various federal and state agencies were also involved in the site investigation, Jayco was initially designated to coordinate a review of the site and to insure compliance with no fewer than seven federal environmental statutes, including the Toxic Substances Control Act ("TSCA"), 15 U.S.C. § 2622; the Federal Water Pollution Prevention and Control Act ("FWPPCA"), 33 U.S.C. § 1367; the Safe Drinking Water Act

("SDWA"), 42 U.S.C. § 300j–9(i); the Clean Air Act ("CAA"), 42 U.S.C. § 7622(a); the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9610; the Energy Reorganization Act ("ERA"), 42 U.S.C. § 5851; and the Solid Waste Disposal Act ("SWDA"), 42 U.S.C. § 6901.

Jayco was actively involved in the coordination of the efforts made to investigate environmental contaminants at the site from June 26, 1997 through July 30, 1998. On the latter date, the Director of the OEPA suspended Jayco from employment for a period of ten days and removed him as site coordinator on the Marion project.

Thereafter, Jayco filed a complaint with the OSHA, a component of the Department of Labor. Jayco alleged that the Plaintiff had discriminated against him in violation of the whistleblower provisions contained in the seven federal environmental acts previously referenced.[1] The Secre-

---

1. As noted by Administrative Law Judge Thomas Phalen, Jr. in his Recommended Decision and Order, dated October 3, 2000, at 56–58:

The purposes and employee protections of the Seven Environmental Acts are as follows: *The Clean Air Act ["CAA"]* aims to "protect and enhance the quality of the nation's air resources." 42 U.S.C. 7401(b). The Act states that "[n]o employer" may discriminate with respect to compensation, terms, conditions or privileges of employment, of any employee who has "commenced caused to be commenced, or is about to commence a proceeding" under the Act, or testified, or is about to testify in any proceeding, or who has "assisted or participated or is about to participate in any manner in such a proceeding or in any other action in "carrying out the purposes of the act." 42 U.S.C. 7622(3).
The objective of the *Safe Drinking Water Act ["SDWA"]*, 42 U.S.C. 300j–9, a subdivision of the Public Health Service Act, ["PHSA"], is to promote safe drinking water. It also states that "[n]o employer" may discharge or otherwise discriminate against employees who have engaged in any of the same actions as those forth in the CAA, or have assisted in a "proceeding to carry out the purposes of this subchapter."
The primary purpose of the *The Toxic Substances Control Act ["TSCA"]*, 15 U.S.C. 2622, is to "assure that chemical sub-

stances and mixtures do not present unreasonable risks of injury to health or the environment." It also states that "[n]o employer" may discriminate against a person because that person has taken any of the same actions as those listed in the CAA, to carry out the purposes of the TSCA, except that there is no specific reference to "a proceeding for the administration" of the Act. 15 U.S.C. 2601(b)(3). Subsection 2602(2)(B)(iv) exempts "special source material," "special nuclear material" and "byproduct material" as defined by the Atomic Energy Act (42 U.S.C.2014) from the ambit of the statute.
The purpose of the *Solid Waste Disposal Act ["SWDA"]*, 42 U.S.C. 6971, is to "assure that hazardous waste management practices are conducted in a manner that protects human health and the environment [and to] minimize the generation of hazardous waste." 42 U.S.C. 6902(a). The Act prohibits any "person" from firing or otherwise discriminating against any employee who has "filed, instituted or caused to be filed or instituted any proceeding," under the Act, or testified, or is about to testify in any proceeding in any proceeding resulting from administration of the act." 42 U.S.C. 6971(a).
The objective of the *Comprehensive environmental Response, Compensation and Liability Act ["CERCLA"]*, 42 U.S.C. 9601, *et seq.* is to prevent the release of hazardous sub-

tary of Labor is directed and authorized to promulgate procedures for the handling of complaints of employment discrimination under the various Acts. *See generally* 15 U.S.C. § 2622; 33 U.S.C. § 1367; 42 U.S.C ⌐ 300j–9(i). The Secretary of Labor has promulgated a regulation which states in pertinent part:

> (a) No employer subject to the provisions of any of the Federal statutes listed in § 24.1(a) ... may discharge any employee ... because the employee, or any person acting pursuant to the employee's request, engaged in any of the activities specified in this section.

> (b) Any employer is deemed to have violated the particular federal law and the regulations in this part if such employer intimidates, threatens, restrains, coerces, blacklists, discharges, or in any other manner discriminates against any employee because the employee has:

> (1) Commenced or caused to be commenced, or is about to commenced or cause to be commenced, a proceeding under one of the Federal statutes listed in § 24.1(a) or a proceeding for the administration or enforcement of any requirement imposed under such Federal statute;

> (2) Testified or is about to testify in any such proceeding; or

> (3) Assisted or participated, or is about to assist or participate, in any manner in such a proceeding or in any other action to carry out the purposes of such Federal statute.

29 C.F.R. § 24.2.

After Jayco filed his complaint with OSHA, the agency conducted an investigation as required by the foregoing. On December 29, 1999; OSHA determined that the OEPA had violated the whistleblower protection of all seven environmental acts.

> stances into the air or water. Similar to the SWDA, it prohibits any "person" from firing or otherwise discriminating against any employee who has provided information to a State or Federal Government, filed instituted or caused to be filed or instituted any proceeding under the Act, or has testified in "any proceeding resulting from the administration or enforcement" of the act. 42 U.S.C. 9610(a).
> The *Federal Water Pollution Prevention and Control Act ["WPCA"]* commonly referred to as the *Clean Water Act ["CWA"]*, 33 U.S.C. 1251, is designed to "restore and maintain chemical, physical, and biological integrity of the Nation's water." The Act also prohibits any "person" from firing or otherwise discriminating against any employee that has filed, instituted, or caused to file or institute, or has either testified or is about to testify concerning proceedings under the Act. 33 U.S.C. 1367.
> The *Energy Reorganization Act ["ERA"]*, 42 U.S.C. Section 5851, addresses "whistleblower" protection against harassment and retaliation by an "employer" for employees involved in the nuclear industry, who, in addition to the other protections set forth in the six other Acts: (1) notify their employer of an alleged violation, (2) oppose a practice that would be a violation of the Atomic Energy Act of 1954, or (3) testify before Congress or any Federal or State agency regarding a violation of the Atomic Energy Act of 1954.

> Similar to the wording of the CAA, SDWA and the TSCA, it states that "[n]o employer" may discharge or otherwise discriminate against any employee with respect to compensation, terms, conditions or privileges of employment because the employee engaged in the above activities, or has assisted or participated or is about to assist or participate in any manner in such proceedings as those listed, "or in any other action to carry out the purposes of this chapter or the Atomic Energy Act of 1954." The other three Acts state that, "[n]o person" may engage in such discriminatory conduct against an employee for protected conduct.
> The ERA differs from the other six Acts in that, once the complainant establishes a prima facie case, the employer must establish by clear and convincing evidence that it would have taken the same unfavorable action, i.e. taken its unfavorable action for a legitimate, nondiscriminatory business reason, as it would have taken, in the absence of the employee's protected activity, rather than merely "articulating" or stating the legitimate business reasons for the action, as is the case with the other six Acts. Another difference is that the employer may be directed to "abate" certain effects of the employer's unfavorable personnel action (which means that the discriminatee may be ordered reinstated with back pay) except compensatory damages, pending court review of the final decision of the Secretary of Labor.

OSHA directed the OEPA to provide Jayco with full back pay for the ten days he was suspended, to reinstate him to his former position as site coordinator, and to pay attorneys fees which he had incurred. Thereafter, OEPA formally notified the Department of Labor, Office of Administrative Law Judges, that it was challenging the determination made by OSHA and sought a formal hearing as to the findings.

Following extensive discovery between OEPA and Jayco, a two week hearing was conducted by Administrative Law Judge Thomas J. Phalen. On October 2, 2000, Judge Phalen issued his decision directing the Ohio EPA to reinstate Jayco, to pay him $45,000 in back pay, $45,000 in compensatory damages, and $45,000 in punitive damages. The Administrative Law Judge reserved ruling on an award of attorneys fees to Jayco's counsel.

In a lengthy, detailed and thorough Recommended Decision and Order and Preliminary Order ("ALJ Order"), the Administrative Law Judge found that Jayco had engaged in a course of conduct which was protected under all of the seven statutes referenced above. From the early stages of his involvement at the Marion site through the time of his removal as supervisor, Jayco asserted that the OEPA had suspended him from employment and removed him as site supervisor because he had insisted that a detailed investigation be conducted in conformity with federal environmental statutes. (See ALJ Order at 86–89.) Specifically, the Administrative Law Judge found that Jayco's removal from the site and ten day suspension were based on pretextual allegations; the actual motivation for the adverse employment action was retaliation for Jayco's efforts to ensure an investigation in compliance with federal environmental law. *Id.* at 77–78.

## II.

The State of Ohio contends that it enjoys sovereign immunity under the Eleventh Amendment[2] with regard to a suit filed against it in any federal judicial forum by a private litigant. The State has filed an appeal of Administrative Law Judge Phalen's decision which is now pending before the Administrative Review Board, an agency of the United States Department of Labor. The State contends that the hearing conducted by the Administrative Law Judge and the appeal now pending before the Administrative Review Board represents an action by Jayco himself against an agency of the state. The OEPA, as a state agency, enjoys the same sovereign immunity as the State of Ohio itself. *Mumford v. Basinski,* 105 F.3d 264 (6th Cir.1997).

The Department of Labor asserts that the proceeding initiated by Jayco does not represent the exercise of judicial authority and is therefore not barred by the Eleventh Amendment. While the Department of Labor agrees that Jayco may not himself enforce a decision of the Department of Labor in a federal court created under Article III of the Constitution, given the limitations of the Eleventh Amendment, it submits that an enforcement action filed by an agency of the United States of America against one of the several states is not barred by the Eleventh Amendment.

While Jayco also advances the position taken by the Department of Labor, he further claims that the whistleblower statutes may be asserted by an individual against the state, notwithstanding the Eleventh Amendment. According to Jayco, the whistleblower statutes essentially protect First Amendment rights regarding freedom of speech. If Jayco is correct, the Eleventh Amendment does not bar a private action in federal court against a state, if Congress has enacted a federal claim under its authority derived from a later provision of the Constitution, the Fourteenth Amendment.[3]

---

**2.** The Eleventh Amendment states:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state.

**3.** The Fourteenth Amendment to the United States Constitution states, in relevant part:

This Court's analysis of the claims presented by the parties begins with consideration of the Supreme Court's decision in *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). Therein, the Court held that the Eleventh Amendment bars an action by a private party against a state in federal court if the action is based upon a federal statute enacted pursuant to Article I of the Constitution. For purposes of the instant case, *Seminole* holds that an act of Congress passed pursuant to its Interstate Commerce powers does not operate to waive the sovereign immunity enjoyed by the states. The Eleventh Amendment, passed after the original Constitution, limits the power of Congress to legislate and otherwise create claims which may be brought by private parties in federal court against a state.

Following the Civil War, the Fourteenth Amendment vested in Congress the right to enforce various constitutional guarantees against the States. To this extent, the Eleventh Amendment is limited by the subsequently ratified provisions of the Fourteenth Amendment. The Supreme Court has recognized that Congress may enforce its authority under Section 5 of the Fourteenth Amendment by authorizing suit in federal court against the state by a private party. *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976); *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board,* 527 U.S. 666, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999). Jayco asserts that the environmental whistleblower statutes are valid Congressional enactments authorizing private action against the state insofar as such statutes protect an employee's constitutional rights under the First Amendment as incorporated through the

due process clause of the Fourteenth Amendment. *Pennekamp v. Florida,* 328 U.S. 331, 66 S.Ct. 1029, 90 L.Ed. 1295 (1946). If Congress has validly enacted legislation creating a private cause of action against the state, such legislation must be based upon the Fourteenth Amendment, rather than the interstate commerce clause, in order to pass constitutional muster.

In *City of Boerne v. Flores,* 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997), the Supreme Court reviewed and defined the authority of Congress under Section 5 of the Fourteenth Amendment to abrogate the sovereign immunity of the various states. The Court recognized that Section 5 permits legislation which prohibits conduct "which is not itself unconstitutional and [thereby] intrudes into 'legislative spheres of autonomy previously reserved to the States.'" *Id.* at 518, 117 S.Ct. 2157, quoting *Fitzpatrick v. Bitzer,* 427 U.S. 445, 455, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). At the same time, the Court held that Congress possessed authority to enforce constitutional rights but "not the power to determine what constitutes a constitutional violation." *Id.* at 519, 96 S.Ct. 2666. The Court further held that Congressional enactments pursuant to the Fourteenth Amendment must satisfy a "congruence and proportionality" test. *Id.* at 520, 96 S.Ct. 2666. This test requires that there be a congruence and proportionality between the constitutional injury to be prevented and the means Congress has adopted to that end. *Id.* at 520, 96 S.Ct. 2666.

More recently, in *Kimel v. Florida Board of Regents,* 528 U.S. 62, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000), the Supreme Court applied the "congruence and propor-

Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

\* \* \* \* \* \*

Section 5. The Congress shall have power to enforce, by appropriate legislation, the provisions of this article.

U.S. CONST. Amend. XIV

tionality" test to the Age Discrimination in Employment Act ["ADEA"], 29 U.S.C. § 623(b). A majority of the Court found that the ADEA imposed upon state governments requirements that were disproportionate to any purportedly unconstitutional conduct. The Court observed that its prior holdings concluded that age classifications do not violate the Equal Protection Clause of the Fourteenth Amendment. *Id.* 120 S.Ct. at 645. The Court concluded that the ADEA was therefore not a remedial statute designed to remedy state based age discrimination.

The Court also noted that the ADEA prohibited "very little conduct likely to be held unconstitutional...." *Id.* at 648. In reviewing the legislative record upon which Congress based the enactment of the ADEA, the Court emphasized that Congress did not identify a pattern of age discrimination by the states and relied instead upon anecdotal evidence. *Id.* at 648–49.

In the instant action, the positions of the State of Ohio and Jayco with respect to the principles announced in *City of Boerne* and *Kimel* are diametrically opposed. Jayco asserts that Congress enacted the whistleblower statutes to protect free speech rights guaranteed by the First Amendment. He argues that the protected activity under the whistleblower statutes encompasses a great deal of what would otherwise be an unconstitutional restraint on the free speech rights of employees. According to Jayco, this fact indicates that the Congressional enactment meets the congruence and proportionality test set forth in *City of Boerne v. Flores, supra.*

■ It is now well-established that the First Amendment protection of free speech extends to public employees who speak out on a matter of public concern.

*Connick v. Myers*, 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). A state employee who suffers an adverse employment action because of the exercise of constitutionally protected speech may maintain a private cause of action against a person, such as a supervisor, who has acted under state law to deprive such employee of the right to free speech as protected by the First Amendment. *See e.g., Barnes v. McDowell*, 848 F.2d 725, 732 (6th Cir. 1988), *cert. denied*, 488 U.S. 1007, 109 S.Ct. 789, 102 L.Ed.2d 780 (1989). Arguably, at least a portion of the conduct prohibited by the environmental whistleblower statutes at issue could also be actionable under 42 U.S.C. § 1983 [4] for violation of the First Amendment.

■ Resolution of whether Congress may constitutionally enact a whistleblower statute under Section 5 powers under the Fourteenth Amendment must wait for another day. Before the Court may find a valid exercise of Congress' Section 5 authority, it must first conclude that Congress unequivocally intended to abrogate a state's sovereign immunity under the Eleventh Amendment. *Florida Prepaid Postsecondary Education Expense Board v. College Savings Bank*, 527 U.S. 627, 635, 119 S.Ct. 2199, 144 L.Ed.2d 575 (1999).

■ This Court finds no indication that Congress intended to abrogate the state's sovereign immunity in the promulgation and enactment of the whistleblower environmental statutes at issue. First, while the parties do not dispute that six of the whistleblower statutes expressly apply to the States,[5] there is no expression of Congressional intent that the statutes were enactments under the Fourteenth Amendment designed to abrogate Eleventh Amendment immunity. Second, the Court

---

**4.** 42 U.S.C. § 1983 states in part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the de-

privation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

**5.** The Toxic Substances Control Act, 15 U.S.C. § 2622 does not expressly apply to the states.

notes that, in all other statutes enacted by Congress in which it has expressly acted to abrogate the immunity of the states from private suits, the remedies available to private litigants include recourse to a full trial in federal court. For example, while a Title VII plaintiff must first exhaust administrative remedies before the Equal Employment Opportunity Commission, the same litigant is entitled to a trial *de novo* before a jury in an Article III court. 42 U.S.C. § 2000e; 42 U.S.C. § 1981a(c). The same is true under the Americans with Disabilities Act and, prior to *Kimel,* the Age Discrimination in Employment Act. 29 U.S.C. § 626(c)(2); 42 U.S.C. § 1981a(c). As will be more particularly described below, in the case of the whistleblower environmental statutes, at no point does a claimant have a right to a trial *de novo* before an Article III court. Instead, enforcement of the whistleblower statutes requires recourse to an administrative proceeding in which an administrative agency, the U.S. Department of Labor, plays a critical role in conducting the hearing on disputed facts and creating the only factual record in the proceedings. Further, the Administrative Law Judge in this case, consistent with prior precedent, concluded that he did not have the legal authority to consider constitutional issues. (ALJ Order at 61). Finally, the Court notes that there is serious doubt as to whether Congress may authorize a non-Article III judicial officer to adjudicate constitutional claims. *Commodity Futures Trading Comm. v. Schor,* 478 U.S. 833, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986).

These findings, in conjunction with Congress' own expression that its authority to enact environmental statutes is based upon interstate commerce powers, lead this Court to conclude that Congress did not intend to abrogate Eleventh Amendment immunity in its enactment of the whistleblower statutes. The parties have not cited the Court to any language in the various environmental statutes or any provision of the Congressional record which would otherwise indicate that Congress intended to abrogate state sovereign immunity through its enforcement authority under the Fourteenth Amendment. Instead, this Court finds that the environmental whistleblower statutes were enacted by Congress under its interstate commerce authority. *See Michigan Peat v. USEPA,* 175 F.3d 422 (6th Cir.1999).

For these reasons, the Court concludes that Jayco may not maintain a private claim against the State of Ohio under the environmental whistleblower statutes.

## IV.

The Department of Labor initially argues that the proceedings before the Administrative Law Judge and the Arbitration Review Board do not constitute the exercise of "judicial power of the United States" as that term is used in the Eleventh Amendment. The Department of Labor submits that the proceedings are conducted by the executive, rather than the judicial, branch of government. The Department observes that, in the course of the proceedings, it may not enforce subpoenas, impanel juries, issue writs or enforce judgments without recourse to an Article III court. Finally, the Department submits that the Secretary of Labor ultimately decides whether she should or should not enforce the findings made by an Administrative Law Judge and the Administrative Review Board.

■ The Court disagrees with the Department's contentions. A review of the regulations applicable to this case as well as the actual proceedings herein demonstrate that the State of Ohio has been subjected to the exercise of Judicial power as a result of the complaint filed by Mr. Jayco.

In accordance with 29 C.F.R. Part 24, Jayco filed a complaint which was thereupon investigated by an Assistant Secretary for Occupational Safety and Health. After OSHA completed its investigation, the Assistant Secretary made an initial determination that a violation of the whistleblower statute had occurred. As the regulations make clear, "[i]f a request for a

hearing is not timely filed, the notice of determination shall become the final order of the Secretary." 29 C.F.R. § 24.4(d)(2). Having received an initial determination by OSHA that Jayco had been wrongfully discharged in violation of the whistleblower statutes, the State of Ohio filed a request for hearing pursuant to 29 C.F.R. § 24.6. Thus, the findings initially made by OSHA did not become binding as the final order of the Secretary.

Section 24.6 outlines the procedure by which an administrative hearing is to be conducted. A hearing is held before an Administrative Law Judge who, while technically employed by the Department of Labor, is vested with independent authority removed from the line functions of the Department of Labor.[6] The section provides that the Administrative Law Judge shall conduct a public hearing. While formal rules of evidence are not applicable, the Administrative Law Judge is to admit only probative evidence and exclude evidence which is immaterial, irrelevant or repetitious. 29 C.F.R. § 24.6. At the conclusion of the hearing, the Administrative Law Judge shall issue a Recommended Decision and Order. 29 C.F.R. § 24.7. In cases brought under the Energy Reorganization Act, such as Jayco's, a preliminary order requiring reinstatement of a complainant to his or her former position "shall constitute the preliminary order of the Secretary and shall be effective immediately whether or not a petition for review is filed with the Administrative Review Board." 29 C.F.R. § 24.7(c)(2). A party dissatisfied with the Recommended Decision and Order of the Administrative Law Judge may file a Notice of Appeal with the Administrative Review Board. 29 C.F.R. § 24.8. Finally, a party may petition for review to a Court of Appeals. *See* 15 U.S.C. § 2622(c); 33 U.S.C. § 1367(b). If any person fails to comply with the final order, enforcement may be sought by way of an action in a District Court. *See e.g.,* 15 U.S.C. § 2622(d).

In summary, the Administrative Law Judge is directed to conduct a full evidentiary hearing, administer oaths, issue subpoenas, rule on evidence, dispose of procedural requests, and make a formal Recommended Decision and Order. Most fundamentally, the record compiled by the agency, particularly the hearing conducted by the Administrative Law Judge, becomes the basis for any review by an Article III Court. There is no provision under any of the environmental statutes nor under the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.,* for a reviewing Article III Court to develop a *de novo* record with regard to an administrative action pursued under these sections. While the making of the record may occur within a federal executive agency, such record becomes the sole basis for review by an Article III court. For these reasons, this Court concludes that, for the limited purposes of this case, the action taken by the Department of Labor as a result of Mr. Jayco's complaint, became judicial action, for purposes of the Eleventh Amendment, at the time the matter was referred to the Administrative Law Judge under 29 C.F.R. § 24.4(d)(3).

The parties have cited this Court to *Commodity Futures Trading Comm. v. Schor,* 478 U.S. 833, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986) which holds that an administrative agency created by Congress under Article I may exercise limited and specialized judicial authority without encroaching upon the judicial authority vested solely in Article III Courts. In this Court's view, the case does not address the Eleventh Amendment issue involved in this dispute. The question here is not whether the Department of Labor may adjudicate specialized statutory disputes.

---

**6.** Administrative Law Judges are appointed pursuant to 5 U.S.C. § 3105 which requires that their duties within an agency "may not [be] inconsistent with their duties and responsibilities as administrative law judges." The Supreme Court recognized in *Butz v. Economou,* 438 U.S. 478, 513, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) that an Administrative Law Judge is to perform adjudicatory duties free from pressure within the agency.

Instead, the question is whether a sovereign state may be forced to defend a claim in a federal forum which may, upon a failure to defend, extinguish the legal rights of the state. Consistent with the Eleventh Amendment, together with *Seminole, supra* and its progeny, this Court answers the question in the negative when the action is based only on legislation enacted pursuant to Congress' interstate commerce powers.

Further, in *Freytag v. Commissioner,* 501 U.S. 868, 899, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991), the Supreme Court clearly recognized that judicial authority may be exercised by a judicial body not otherwise established under Article III of the Constitution. In that case, the Court found that a Tax Court resembled a court of law insofar as it had the authority to adjudicate cases. While a Tax Court does indeed have more authority than an Administrative Law Judge as authorized under the environmental whistleblower statutes, the difference is one of degree.

There is no question, however, that the United States of America, acting through an agency such as the Department of Labor, may commence a suit in federal court against one of the various states. The immunity otherwise enjoyed by the states through the Eleventh Amendment does not bar an action by the United States of America. The law makes a sharp distinction between actions brought by a private party and those commenced by the United States of America against the state with regard to a statutory action created by Congress solely through its interstate commerce powers. As the Supreme Court recently explained in *Alden v. Maine,* 527 U.S. 706, 755–56, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999):

> A suit which is commenced and prosecuted against a State in the name of the United States by those who are entrusted with the constitutional duty to "take care that the laws be faithfully executed" U.S. Const., Art. II, § 3 differs in kind from the suit of an individual: While the Constitution contemplates suits among the members of the federal

system as an alternative to extra legal measures, the fear of private suits against nonconsenting States was the central reason given by the founders who chose to preserve the States' sovereign immunity. Suits brought by the United States itself require the exercise of political responsibility for each suit prosecuted against a State, a control which is absent from a broad delegation to private persons to sue nonconsenting States.

The United States urges this Court to find that the complaint initiated by Jayco may result in relief which may only be enforced by the Department of Labor, and not by Jayco himself. In this view, the administrative proceedings before the Department of Labor may be pursued by Jayco against the State of Ohio; once Jayco obtains an order of relief through such process, the federal government may then, in its sole discretion, consistent with the principles set forth in *Alden v. Maine, supra,* decide whether to seek enforcement in federal court.

In this Court's view, the Department of Labor's position would be meritorious were it not for the fact that Jayco himself may, and in fact did, initiate an action on his own which resulted in a lengthy adversarial hearing in which the State of Ohio without its consent was required to, in essence, litigate in a federal forum a claim otherwise barred by the Eleventh Amendment. Prior to the administrative hearing, the Department of Labor did not "exercise political responsibility for [a] suit prosecuted against [the] State," such responsibility having been delegated to Jayco in violation of the principle described in *Alden v. Maine, supra.*

█ Jayco argues that because the State of Ohio filed its request for a public hearing, it has waived its claim of sovereign immunity. The notion of waiver rests upon a conclusion that the State has engaged in a voluntary act in order to give up a right it otherwise possesses. In this case, the State of Ohio received an adverse

ruling from the Department of Labor. Had it failed to file an appeal, the order would have become final. Any attempt to review the order would have been fruitless, given the fact that the State would have voluntarily foregone the creation of a record upon which a review could be based. Under such circumstances, the filing of a request for a hearing cannot be said to constitute a voluntary waiver.

■ Jayco further argues that because the State fully litigated its defenses before the Administrative Law Judge, it has waived its right to now raise the defense of sovereign immunity. While this Court does not condone a tardy assertion of sovereign immunity by the State of Ohio, the defense of sovereign immunity under the Eleventh Amendment may be raised at any time in the proceedings. *Popovich v. Cuyahoga Co. Court of Common Pleas,* 227 F.3d 627 (6th Cir.2000). Nonetheless, the fact that the State of Ohio has raised the defense of sovereign immunity only after a full hearing on the merits of Mr. Jayco's claims is not without consequence. This Court cannot restrain an administrative hearing that is now concluded. The administrative record is complete and the matter is pending review before the Administrative Review Board of the Department of Labor. This Court must consider the relief to which, if any, the State of Ohio is entitled given the Court's conclusion that the hearing occurred in violation of the State's Eleventh Amendment sovereign immunity.

The Court's primary concern at this juncture in the case is that the Department of Labor has yet to finalize its position with regard to whether it will, in its administrative discretion, pursue the relief recommended by Administrative Law Judge Thomas Phalen. It is in this regard that the Court finds that the State of Ohio is entitled to declaratory relief. Because the process complained of by the State may be revisited in future proceedings, the Court will address those portions of the regulations and administrative procedure which implicate, and to some extent potentially violate, the Eleventh Amendment.

All seven of the environmental whistleblower statutes at issue are governed by the provisions of 29 C.F.R. Part 24. Section 24.3 permits the filing of a complaint by an employee covered by one or more of the seven statutes. Section 24.4 requires an investigation by the Assistant Secretary of Labor of the charges set forth in the Complaint. The Assistant Secretary is required to issue a Notice of Determination indicating the initial agency view as to whether the claims have merit. The State readily concedes that no Eleventh Amendment issues are implicated with regard to these initial proceedings. The regulations, however, are clearly designed to apply to cases involving private employers as well as public organizations, including the various states.

Several provisions of the regulations, if literally applied without consideration of the Eleventh Amendment, would be facially invalid. For example, without any analysis and discretion on the part of the Department of Labor itself, an individual unsatisfied with the original Notice of Determination may under Section 24.4(d)(1) obtain a full hearing against a state before an Administrative Law Judge. This provision passes constitutional muster only if the Department of Labor itself elects to join the action at the time the case is referred to the Office of Administrative Law Judges.[7] In the event the Department of Labor declines to participate in such proceeding against the State, the action must be terminated and may not proceed to a hearing by an individual complainant.

■ The Court emphasizes that the Department of Labor is free to initiate a broad range of investigatory techniques to

---

7. The regulations further provide that "the Assistant Secretary may participate as a party or participate as amicus curiae at any time in the proceedings." 29 C.F.R. § 24.6(f)(1). Consequently, the Department of Labor enjoys discretion to join as a party at any stage of the case.

determine whether it should exercise discretion in pursuing a claim to the Office of Administrative Law Judges and beyond. The procedure described above involving an Administrative Law Judge is, in the Court's view, tantamount to the exercise of judicial power. In contrast, an investigation by employees of the agency in the form of taking of statements, subpoenaing documents, reviewing records and work sites, etc. is an act of an investigatory, rather than an adjudicatory, nature. The Court does not in any way restrict the ability of the Department of Labor to engage in such investigation in order to determine whether or not a complaint has merit before committing the agency to future action. Nonetheless, the absence of agency involvement as a party in the administrative process beyond the initial complaint stage renders the regulations otherwise unconstitutional with respect to claims against a sovereign state.

█ It is without question that a Court must attempt to interpret statutes and regulations in a manner which, if possible, renders such provisions constitutional. *Machinists v. Street*, 367 U.S. 740, 749, 81 S.Ct. 1784, 6 L.Ed.2d 1141 (1961). 29 C.F.R. Part 24 passes constitutional muster so long as the Department of Labor itself initiates all the stages of the proceedings other than the initial complaint. Because these regulations may be harmonized with the Eleventh Amendment based upon earlier action by the Secretary of Labor, this Court is not inclined to declare such regulations unconstitutional. Instead, the Court interprets the regulations to require the Department of Labor to exercise its discretion prior to a referral of the complaint and Notice of Determination to the Office of Administrative Law Judges.

█ Further, 29 C.F.R. § 24.7(c)(2) requires immediate reinstatement of an employee, if the same is recommended by the Administrative Law Judge, notwithstanding the pendency of an appeal. This provision may only apply with regard to a State in the event the Department of Labor seeks enforcement.

The State of Ohio cites this Court to the recent case of *State of Rhode Island v. United States Department of Labor,* 115 F.Supp.2d 269 (D.R.I.2000). The Court therein reviewed similar claims made by the State of Rhode Island with regard to a whistle-blower action brought against it by an employee of the State. In that case, the Department of Labor initially determined that the claims made by the individual complainant were without merit. The claimant, rather than the State, thereupon filed a request for a hearing before an Administrative Law Judge. Consistent with this Court's conclusion, the District Court therein determined that administrative proceedings before the Administrative Law Judge were judicial in nature and were barred by the Eleventh Amendment. This Court disagrees, however, with the relief ordered by the Court in that case. Therein, the Court enjoined any further administrative proceedings. The District Court did not permit the Department of Labor to decide whether to intervene as a party to the proceedings, even though no other court at that time had ever invalidated the procedures set forth in 29 C.F.R. § 24 as applied to the various states.

In this case, the Department of Labor has yet to decide whether the claims of Mr. Jayco should be pursued by the agency. The Department of Labor should be given an opportunity to make such determination. The record compiled by the Administrative Law Judge in this case appears to be thorough and complete. For this Court to rule that the Department of Labor could not rely upon the now concluded administrative proceeding, would serve no jurisprudential purpose. Otherwise, the Department of Labor could, consistent with this Order, exercise its discretion, intervene as a party, and potentially obtain a second, otherwise duplicative, hearing. Because the Department of Labor had a right to rely on the regulations set forth in 29 C.F.R. Part 24, it would also be fundamentally unfair to terminate the administrative proceedings before the Department of Labor had an opportunity to

exercise its discretion to intervene as a party.

In sum, this Court concludes that once a claimant such as Jayco files a complaint against the State under one of the various federal whistleblower environmental statutes, the Department of Labor must, after full investigation, determine whether the claim has merit and whether the agency itself will join the action. If at the time the agency makes its initial determination under 29 C.F.R. § 24.4(d)(1), the agency determines that it will participate as a party in the action, the matter may then proceed through the full administrative process. In the event that the agency declines to participate as a party, the action must terminate, consistent with the Eleventh Amendment. Only the federal government, and not a private party, may pursue such claims against the sovereign state, consistent with the Eleventh Amendment.

■■■ As previously indicated, the State of Ohio seeks permanent injunctive and declaratory relief. The standard for granting a permanent injunction is essentially the same as the standard for granting a preliminary injunction, with the exception that the Plaintiff must show actual success on the merits rather than a mere likelihood of success. *See United States v. Miami University*, 91 F.Supp.2d 1132, 1147 (S.D.Ohio 2000). The Plaintiff must further show that it will suffer irreparable injury if the permanent injunction is not issued; that the injunction will not have a harmful effect on third parties; and that the public interest will be served by the injunction. *Id.*

In this case, the Court concludes that the State of Ohio is entitled to permanent injunctive and declaratory relief consistent with the foregoing. The Court finds that the State of Ohio has demonstrated actual success in the merits of its request for

relief to the extent described above. Furthermore, the Court finds that irreparable injury would occur in the absence of the relief requested; the relief will not be harmful to third parties; and, the public interest will be served by the issuance of an injunction. In addition, pursuant to 28 U.S.C. § 2201,[8] this Court concludes that the State of Ohio is entitled to declaratory relief with respect to the regulations set forth in 29 C.F.R. Part 24.

## IV.

In light of the foregoing, the Plaintiff's request for Injunctive and Declaratory Relief (Doc. # 2) is GRANTED. The Court hereby issues a declaratory judgment that the regulations set forth in 29 C.F.R. Part 24 relating to claims made by individual complainants against the various States may only be applied consistent with the Eleventh Amendment according to the provisions of this Opinion and Order. Further, unless the United States of America Department of Labor elects to intervene as a party in the case of Paul Jayco, Case No.1999-CAA-5 within thirty (30) days from the date of this Order, the Defendants are otherwise restrained from any further adjudication against the State of Ohio regarding any claims in the proceeding.[9]

This Order having determined all of the issues raised in this case, the Clerk is directed to **DISMISS** the same.

**IT IS SO ORDERED.**

---

**8.** 28 U.S.C. § 2201 provides that, except in certain cases, a federal court "may declare the rights and other legal relations of any interested party."

**9.** The Plaintiff has raised various claims under the Tenth Amendment to the Constitution

in Count II of its Complaint. The Plaintiff has not pursued such claims in the briefing of this case. The same are therefore DENIED as having been abandoned.