STATE OF CONNECTICUT DEPART-
MENT OF ENVIRONMENTAL
PROTECTION, Plaintiff,

v.

OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION, Charles N.Jeffress, Assistant Secretary of Labor for Occupational Safety and Health, Ruth E. McCully, Regional Administrator, Region 1, OSHA, and John J. Stanton, Jr., OSHA Area Director, and Anne Rapkin, Defendants.

No. 3:99CV2291 GLG.

United States District Court,
D. Connecticut.

April 23, 2001.

---

### OPINION

GOETTEL, District Judge.

The State of Connecticut Department of Environmental Protection ("State" or "State DEP") has brought this action seeking a preliminary injunction under Rule 65, Fed.R.Civ.P., to prevent the United States Department of Labor's Occupational Safety and Health Administration ("DOL" or

"OSHA") and its officials from investigating, hearing, and adjudicating an adversary complaint filed by State DEP employee, Anne Rapkin ("Rapkin"). The State claims that this federal administrative investigation and the adjudicatory proceedings violate its sovereign immunity.

Finding that the requirements for the issuance of a preliminary injunction have been met, this Court grants Plaintiff's Motion for a Preliminary Injunction [Doc. # 6], enjoining OSHA and the named OSHA officials from proceeding with the investigation, adjudication, and prosecution of the Rapkin complaint.

### PROCEDURAL BACKGROUND

On September 22, 1999, Rapkin, an attorney with the State DEP, filed a complaint with OSHA against the State DEP (docketed as Rapkin/1–0280–99–037), alleging that the State DEP had discriminated against her for participating in protected activities[1] in violation of the employee protection provisions of the Clean Air Act, 42 U.S.C. § 7622, the Clean Water Act, 33 U.S.C. § 1367, and the Solid Waste Disposal Act, 42 U.S.C. § 6971.[2] A second complaint was filed by Rapkin against the State DEP on November 5, 1999 (Rapkin/1–0280–00–005), alleging retaliation.[3] Rapkin's OSHA

complaints sought (1) compensatory damages for mental anguish, pain and suffering inflicted on Rapkin and her family by the allegedly unlawful conduct of the State DEP, (2) attorney's fees, and (3) an injunction, enjoining the State DEP from further harassment, intimidation, and retaliation. Rapkin also sought to require the State to "reconstitute" the Office of Legal Counsel within the State DEP and to restore her former job duties. OSHA notified the State DEP of both filings and of OSHA's mandatory investigation. The State was asked to direct all documents in support of its position to the investigator assigned to the case.

The State responded to the initial complaint by letter, asking OSHA to dismiss the complaint based upon the State's sovereign immunity. The State asserted that its immunity "provides not only a complete bar to any action by Rapkin but also prevents OSHA from any further proceeding against the [State] DEP." (Letter dated Oct. 22, 1999 at 1, Ex. D to Rocque Aff.) When OSHA refused to dismiss the complaint, the State filed the instant suit in this Court, seeking a declaration that Rapkin's OSHA complaint violates the State's sovereign immunity and seeking a temporary restraining order and a permanent

1. At oral argument, this Court raised the question of whether Rapkin's allegations were covered by the employee protection provisions of the environmental statutes. The State maintained that this was a matter for OSHA in the first instance, if OSHA is allowed to proceed with its investigation. Because the Court grants the State's request for a preliminary injunction, the Court does not reach the merits of this substantive issue.

2. Also commonly referred to as the "whistleblower" provisions, the employee protection provisions of the federal environmental statutes prohibit an employer from firing or in any other way discriminating against any employee by reason of the fact that such employ-

ee has filed, instituted, or caused to be filed or instituted any proceeding under the statutes, or has testified or is about to testify in any proceeding resulting from the administration or enforcement of the employee protection provisions of the statutes. See 33 U.S.C. § 1367(a); 42 U.S.C. § 6971(a); 42 U.S.C. § 7622(a). These "whistleblower" provisions apply not only to private employers but also to public employers, including the States. See 33 U.S.C. § 1362(5); 42 U.S.C. § 6903(15); 42 U.S.C. § 7602(e).

3. Although we do not have the second complaint before us, it appears from the parties' memoranda that the second complaint alleges retaliation.

injunction enjoining OSHA from proceeding with the investigation or prosecution of Rapkin's OSHA case and further enjoining Rapkin from filing any further complaints against the State DEP or its officials [Doc. # 6].[4]

The State's application for a temporary restraining order became moot when the OSHA defendants agreed not to proceed with their investigation of the Rapkin complaint until the motion for preliminary injunction was decided. This Court then heard oral argument on the motion for preliminary injunction, followed by the submission of supplemental briefs.[5]

## INTERVENING FEDERAL DECISIONS

Since oral argument, three federal district courts have handed down decisions in similar cases, in which a State or State agency sought on sovereign immunity grounds to enjoin OSHA proceedings involving private whistleblower complaints. *See State of Rhode Island Department of Environmental Management v. United States*, 115 F.Supp.2d 269 (D.R.I. 2000); *State of Ohio Environmental Protection Agency v. United States Department of Labor*, 121 F.Supp.2d 1155 (S.D.Ohio 2000); *State of Florida v. United States*, 133 F.Supp.2d 1280 (N.D.Fla. 2001).[6]

All three federal district court cases involved whistleblower complaints filed by private individuals with OSHA, each alleging violations of the employee protection provisions of the federal environmental statutes by a State agency. All three decisions held that State sovereign immunity was applicable to federal agency proceedings, although they reached different conclusions as to the point at which the State's sovereign immunity barred further actions by the agency.

In the *State of Rhode Island* case, the District Court enjoined all further agency proceedings, holding that the State's sovereign immunity protected it from prosecution of the individuals' complaints before OSHA. *State of Rhode Island*, 115 F.Supp.2d at 279. The Court concluded that,

unless waived or validly abrogated, sovereign immunity bars the assertion or adjudication of claims made against a state by a private party and it protects a state from being required to appear and defend itself against such claims regardless of the forum in which those claims are made.

*Id.* at 274. The Court noted, however, that it was not enjoining OSHA from investigating the alleged violations on which the complaints were based or seeking to enforce the State's compliance with federal

---

4. Rapkin has also filed in this Court another action against certain individual officials of the State DEP, *Rapkin v. Rocgue*, No. 3:99CV01928(GLG) (D.Conn.), which contains the same factual allegations as set forth in her OSHA complaint. Rapkin has conceded that she cannot file a direct action in federal court against the State and, thus, did not name the State DEP as a defendant in *Rapkin v. Rocgue*.

5. Additionally, the Court permitted the Public Employees for Environmental Responsibility ("PEER") to file a brief as *amicus curiae*. PEER asserts that the State waived its sover-

eign immunity by virtue of its receipt of federal funds from the United States Environmental Protection Agency ("EPA") under the environmental statutes and its agreement to comply with these federal statutes as a condition to its receipt of these federal funds. Because the OSHA Defendants are not claiming that there has been a waiver of sovereign immunity by the State, we do not reach this issue.

6. With the Court's permission, the parties submitted additional briefs addressing the first of these decisions, the *State of Rhode Island* decision.

law.[7] *Id.* at 279.

Likewise, in the *State of Florida* case, the District Court held that the State's sovereign immunity barred both the commencement and prosecution of a federal administrative proceeding by a private individual against the State "to the same extent it would protect the State from a private individual's lawsuit in state or federal court." *State of Florida*, 133 F.Supp.2d at 1288. The Court held that the "the constitutional dignity of the states demands that they not be 'summoned as defendants to answer the complaints of private persons,'" regardless of the forum. *Id.* (*quoting Alden v. Maine*, 527 U.S. 706, 748, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999)). The Court reasoned that

> [i]f state sovereignty prohibits either the Congress under Article I of the Constitution or the federal courts under Article III from subjecting the state to claims of private individuals, then surely the result should be no different for an agency created not by the Constitution itself but only by Congress under its Article I powers.

*Id.*

The District Court in *State of Ohio* held that the State's sovereign immunity applied to federal agency adjudicatory proceedings but disagreed with the *State of Rhode Island* holding to the extent that it enjoined all proceedings by the DOL. Instead, the Ohio Court allowed the agency to continue its investigation to allow it to decide whether to participate as a party in the proceedings. The Court rejected the DOL's argument that the proceedings before the Administrative Law Judge ("ALJ") and the Arbitration Review Board did not constitute the exercise of "judicial power of the United States." *State of*

*Ohio*, 121 F.Supp.2d at 1163. The Court cited the implementing regulations, 29 C.F.R. Part 24, which direct the ALJ to conduct a full evidentiary hearing, administer oaths, issue subpoenas, rule on evidence, dispose of procedural requests, and make a formal recommended decision and order. *Id.* at 1164. "More fundamentally," the Court noted, "the record compiled by the agency, particularly the hearing conducted by the [ALJ], becomes the basis for any review by an Article III Court." *Id.* Nevertheless, drawing a distinction between the adjudicatory proceedings before an ALJ and the agency's investigation of the complaint, which it characterized as merely "investigatory," the Court held that the DOL should not be enjoined from making a full investigation of the individual's complaint in order to determine whether to intervene as a party. *Id.* at 1167. If the DOL determined that it would participate as a party in the action, the matter would proceed through the full administrative process; if the DOL declined to participate, the action must terminate consistent with the Eleventh Amendment. *Id.* at 1168.

Most recently, the Fourth Circuit Court of Appeals decided the case of *South Carolina State Ports Authority v. Federal Maritime Commission*, 243 F.3d 165 (4th Cir. 2001), which presented the same issue, although in the context of proceedings initiated by a private party before a different federal agency. In that case, the South Carolina State Ports Authority claimed that the State's sovereign immunity prohibited a private cruise ship company from suing it before the Federal Maritime Commission. In a compelling decision written by Chief Judge Wilkinson, the Fourth Circuit held that "[s]overeign immunity ap-

---

7. It is not clear to this Court that OSHA has any independent authority to investigate the alleged violations of the employee protection statutes absent the filing of a complaint by a private party. However, that is an issue that is not before the Court in the instant case.

plies to proceedings brought in any forum by a private party against a non-consenting state." 243 F.3d at 178. The Court cited the Supreme Court's holding in *Alden* for the proposition that "state sovereign immunity transcends the forum in which the state is sued." *Id.* at 169.

> Private suits against nonconsenting States ... present the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties, regardless of the forum.... Not only must a State defend or default but also it must face the prospect of being thrust, by federal fiat and against its will, into the disfavored status of a debtor, subject to the power of private citizens to levy on its treasury or perhaps even government buildings or property which the State administers on the public's behalf.

*Id.* (quoting *Alden*, 527 U.S. at 749, 119 S.Ct. 2240 (internal citations and quotations omitted)).

The Fourth Circuit critically analyzed "[t]he history, the text, and the structure of the Constitution," which confirmed "that under its Article I powers, Congress cannot authorize private parties to haul unconsenting states before the adjudicative apparatus of federal agencies and commissions." *Id.* at 178. The Court reasoned that "[t]o hold otherwise would destroy the delicate equilibrium that is dual sovereignty." *Id.* Noting that, historically, it was the "spectre of private suits against the states that mattered to the founders, not the forums in which those suits might happen to be brought," the Court concluded that Congress should not be able to employ an Article I administrative tribunal instead of an Article III court as an "end-run around the Constitution." *Id.* at 172. "Sovereign immunity is not so hollow a concept as to prohibit proceedings in certain fora like a federal or state court while at the same time permitting a similar proceeding to take place under the auspices of a legislative court or an agency adjudication." *Id.* Accordingly, the Court held that the State's sovereign immunity barred any proceeding where a federal officer adjudicates disputes between private parties and unconsenting States, "whether the forum be a state court, a federal court, or a federal administrative agency." *Id.*

The Fourth Circuit then analyzed the Federal Maritime Commission's administrative process and found that the proceeding "walks, talks, and squawks very much like a lawsuit." *Id.* at 174. The Court rejected the argument of the federal government that the proceedings were nothing more than an investigation. The Court noted that an impartial officer, an ALJ, presides over the proceedings to determine the rights and responsibilities of the parties. The ALJ conducts the proceedings in a "judicious" manner, hearing witnesses, issuing subpoenas, authorizing depositions. *Id.* The Court also rejected the federal government's contention that the proceedings are not an adjudication because the agency itself has no enforcement authority. That argument, the Court held, ignores the fact that by statute, the "Commission *must* hear all complaints." *Id.* at 175 (original emphasis). "The Attorney General's discretion at the back end of the process simply does not help the unconsenting state up front." *Id.* The Court observed that "it is difficult to believe that the agency adjudication is so meaningless as to permit a private party to subject an unconsenting state to agency proceedings *because of* the adjudication's very emptiness." *Id.* (original emphasis). Accordingly, the Court held that the State's sovereign immunity protected it from being brought before a federal administrative tribunal by a private party. *Id.* at 166.

## DISCUSSION

We turn now to the State's request for a preliminary injunction in the instant case. We begin by examining the standard for granting a preliminary injunction in the Second Circuit. We then focus on the question of whether the State has carried its burden of showing a clear or substantial likelihood of success on the merits. To that end, we review the federal agency proceedings at issue. Concluding that they are adjudicatory in nature, we then discuss the applicability of State sovereign immunity to these proceedings and hold that further investigation or adjudication of Rapkin's OSHA complaints against the State is barred by sovereign immunity.

### Preliminary Injunction Standard

■■■ The standard for obtaining injunctive relief in the Second Circuit is well established. Ordinarily, a preliminary injunction will be granted if the party seeking the injunction establishes that "1) absent injunctive relief, it will suffer irreparable harm, and 2) either a) that it is likely to succeed on the merits, or b) that there are sufficiently serious questions going to the merits to make them a fair ground for litigation, and that the balance of hardships tips decidedly in favor of the moving party." *Otokoyama Co. Ltd. v. Wine of Japan Import, Inc.*, 175 F.3d 266, 270 (2d Cir.1999); *Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 37 (2d Cir.1995). But when, as here, the moving party seeks a preliminary injunction that will affect "government action taken in the public interest pursuant to a statutory or regulatory scheme, the injunction should be granted only if the moving party meets the more rigorous likelihood-of-success standard." *Beal v. Stern*, 184 F.3d 117, 122 (1999)(internal quotations omitted); *Bery v. City of New York*, 97 F.3d 689, 694 (2d Cir.1996), *cert. denied*, 520 U.S. 1251, 117 S.Ct. 2408, 138 L.Ed.2d 174

(1997). When the injunction sought "will alter rather than maintain the status quo," the movant must show a "clear" or "substantial" likelihood of success. *Rodriguez v. DeBuono*, 175 F.3d 227, 233 (2d Cir.1999)(internal citations and quotations omitted). In other words, in this case, the State must establish a clear or substantial likelihood of success on the merits in order for this Court to enjoin further proceedings by OSHA. *See Tom Doherty Assocs.*, 60 F.3d at 34.

### A. Irreparable Harm

In this case, the State alleges a violation of its constitutional right of immunity from suit by a private party. The State asserts that, if this Court does not grant the requested injunctive relief, it is placed in the untenable position of defending itself before the DOL, or being found in default and facing a subsequent enforcement action. The State maintains that to require it to defend itself against this private complaint, albeit an administrative complaint, violates its constitutional rights.

■■■ The Second Circuit has held that the alleged violation of a constitutional right triggers a finding of irreparable injury. *Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir.1996). Because violations of constitutional rights are presumed irreparable, *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), "the very nature of [the State's] allegations" satisfies the requirement that it show irreparable injury. *Bery*, 97 F.3d at 694. Therefore, the real issue in this case is whether the State has established a clear or substantial likelihood of success on the merits.

### B. Clear or Substantial Likelihood of Success on the Merits

#### 1. The OSHA Administrative Proceedings

The employee protection statutes at issue prohibit employers from discriminat-

ing against an employee who files, institutes, or causes to be filed or instituted a proceeding under the federal environmental statutes. *See* Note 2, *supra.* Each of these statutes authorizes an employee, who believes he or she has been discriminated against in violation of the statute, to file a complaint or application with the Secretary of Labor.[8] The statutes then require the Secretary to notify the named respondents of the filing of the complaint.[9] Although the wording of the statutes varies slightly, all mandate that, upon receipt of the complaint, the Secretary must conduct, or cause to be conducted, an investigation of the violation alleged in the complaint.[10]

The implementing regulations promulgated by the Secretary of Labor, 29 C.F.R., Part 24, apply to all three statutes and state that within thirty (30) days of the receipt of a complaint the Assistant Secretary shall complete the investigation, determine whether the alleged violation has occurred, and give notice of the determination. The notice of determination shall contain a statement of the reasons for the findings and conclusions and, if the Assistant Secretary has determined that a violation has occurred, shall include an appropriate order to abate the violation. 29 C.F.R. § 24.4(d)(1). The notice of determination shall include a notice to the parties that any party requesting a review of the determination, or any part thereof, shall file a request for a hearing with the Chief Administrative Law Judge[11] within

8. The Clean Water Act and the Solid Waste Disposal Act provide that any employee who believes that he or she has been fired or otherwise discriminated against by any person in violation of the employee protection statutes may, within thirty days after the violation occurs, "apply to the Secretary of Labor for a review of such firing or alleged discrimination." 33 U.S.C. § 1367(b); 42 U.S.C. § 6971(b). The Clean Air Act uses slightly different wording. It provides that any employee who believes that he has been discriminated against may "file (or have any person file on his behalf) a complaint with the Secretary of Labor ... alleging such discharge or discrimination." 42 U.S.C. § 7261(b)(1). The implementing regulations are the same for all three statutes. They provide that no particular form of complaint is required, except that it must be in writing and should include a full statement of the acts and omissions, with pertinent dates, which are believed to constitute the violation. 29 C.F.R. § 24.3(c). The complaint must be filed within thirty days after the occurrence of the alleged violation, 29 C.F.R. § 24.3(b), and may be filed in person or by mail at any local OSHA office or at the national office of the Assistant Secretary of OSHA, U.S. Department of Labor in Washington, D.C. 29 C.F.R. § 24.3(d).

9. The Clean Water Act and the Solid Waste Disposal Act provide that the Secretary shall send a copy of the application to the respon-

dent(s). 33 U.S.C. § 1367(b); 42 U.S.C. § 6971(b). The Clean Air Act states that the Secretary shall notify the person named in the complaint of the filing of the complaint. 42 U.S.C. § 7622(a). *See also* 29 C.F.R. § 24.4(a).

10. The Clean Water Act and Solid Waste Disposal Act state that "[u]pon receipt of such application, the Secretary of Labor shall cause such investigation to be made as he deems appropriate." 33 U.S.C. § 1367(b); 42 U.S.C. § 6971(b). The Clean Air Act states that upon receipt of the complaint, the Secretary "shall conduct an investigation of the violation alleged in the complaint." 42 U.S.C. § 7622(b)(2)(A). The Regulations applicable to the three acts provide that the Assistant Secretary (meaning the Assistant Secretary for OSHA or his or her designee) shall "on a priority basis" investigate and gather data concerning the case and may enter and inspect such places and records and make copies thereof, may question persons charged in the complaint or employees of the employer, and may require the production of documentary or other evidence deemed necessary to determine whether a violation of the law involved has been committed. 29 C.F.R. § 24.4(b).

11. Administrative Law Judges are appointed pursuant to 5 U.S.C. § 3105. While technically employed by the Department of Labor,

five business days of receipt of the determination.[12] 29 C.F.R. § 24.4(d)(2). The other party in turn may also request a hearing. If a request for a hearing is filed, the notice of determination shall become inoperative and shall become operative only if the case is later dismissed. *Id.* If a request for a hearing is not timely filed, the notice of determination shall become the final order of the Secretary. *Id.*

Once the administrative law judge ("ALJ") receives a request for a hearing, within seven days, he or she must notify the parties of the date, time and place of the hearing. 29 C.F.R. § 24.6(a). In all proceedings, the parties have the right to be represented by counsel. 29 C.F.R. § 24.6(d). All hearings are open to the public and are reported. 29 C.F.R. § 24.6(e)(2). The Assistant Secretary of OSHA is given the discretion to participate as a party or as *amicus curiae* in any proceeding. 29 C.F.R. § 24.6(f)(1). Unless the parties jointly request or agree to an extension of time, the ALJ is required to issue a recommended decision within twenty days after the termination of the proceeding at which evidence was submitted. The recommended decision must contain appropriate findings, conclusions and a recommended order and be served on all parties. 29 C.F.R. § 24.7(a).

After issuance of a recommended decision that the complaint has merit and that a violation has occurred, the ALJ is required to issue an order that the respondent take appropriate affirmative action to abate the violation, which may include reinstatement of the employee, together with compensation, including back pay, and when appropriate, compensatory damages. 29 C.F.R. § 24.8(c)(1). The recommended decision of the ALJ becomes the final order of the Secretary unless a petition for review is timely filed with the Administrative Review Board. 29 C.F.R. § 24.7(d). If a party seeks review, he or she is required to file a petition for review with the Administrative Review Board within ten days. If timely filed, the ALJ's recommended decision becomes inoperative unless and until the Board issues an order adopting the recommended decision. 29 C.F.R. § 24.8. A final decision must be issued by the Review Board within ninety days of its receipt of the complaint. 29 C.F.R. § 24.8(c). The statutes further provide for a right of review in the Courts of Appeals. 33 U.S.C. §§ 1367(b), 1369(b)(1); 42 U.S.C. §§ 6971(b) 7622(c)(1). If any party fails to comply with the final order of the Secretary, enforcement may be sought by way of an action in federal district court. 42 U.S.C. § 7622(d), (e).

### 2. State Sovereign Immunity

The doctrine of State sovereign immunity and its breadth vis-a-vis the Eleventh Amendment have been discussed at length in several recent Supreme Court decisions. *See Alden v. Maine,* 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999); *Seminole Tribe of Florida v. Florida,* 517 U.S.

---

the ALJ is vested with independent authority and is required to perform his or her adjudicatory duties free from pressure from the Agency. *See State of Ohio,* 121 F.Supp.2d at 1164 & n. 6 (citing *Butz v. Economou,* 438 U.S. 478, 513, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978)).

**12.** The Clean Water Act and the Solid Waste Disposal Act require that the investigation provide an opportunity for a public hearing at the request of any party to enable the parties to provide information relating to the alleged violation. 33 U.S.C. § 1367(b); 42 U.S.C. § 6971(b). Written notice of the hearing must be provided to the parties at least five days prior thereto, and the hearing must be of record and subject to the provisions of section 554 of Title 5, the Administrative Procedures Act.

44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996); *see also Board of Trustees of the University of Alabama v. Garrett*, 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001)(discussing Congressional abrogation of a State's sovereign immunity in the context of the Americans with Disabilities Act); *Kimel v. Florida Board of Regents*, 528 U.S. 62, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000)(discussing Congressional abrogation of a State's sovereign immunity in the context of the Age Discrimination in Employment Act); *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board*, 527 U.S. 666, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999)(discussing Congressional abrogation under the Fourteenth Amendment of a State's sovereign immunity and express waiver by a State). Additionally, the Fourth Circuit in *South Carolina State Ports Authority*, and the District Courts in the *State of Rhode Island*, *State of Florida*, and *State of Ohio* decisions have carefully analyzed State sovereign immunity in the context of federal agency proceedings. Thus, a lengthy discourse on this subject is not necessary for purposes of this decision.

■ The doctrine of State sovereign immunity finds expression in the Eleventh Amendment, which provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or in equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or

Subjects of any Foreign State." However, in interpreting the scope of the States' constitutional immunity from suit, the Supreme Court has looked to the historical concept of State sovereign immunity rather than adhering to the literal wording of the Eleventh Amendment. Thus, in *Hans v. Louisiana*, 134 U.S. 1, 14–15, 10 S.Ct. 504, 33 L.Ed. 842 (1890), the Court held that sovereign immunity barred a citizen from suing his own State under the federal-question head of jurisdiction. Moreover, it is well settled that State immunity extends not only to the States but also to State agencies and to State officers who act on behalf of the State. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 142–47, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993); *Farricielli v. Holbrook*, 215 F.3d 241, 245 (2d Cir. 2000).[13]

■ Although State sovereign immunity is often referred to as "Eleventh Amendment immunity," the Supreme Court has recently reaffirmed that a State's sovereign immunity far exceeds the literal words of the Eleventh Amendment. As the Supreme Court explained, the phrase "Eleventh Amendment immunity" is "a convenient short-hand but something of a misnomer, for the sovereign immunity of the States neither derives from nor is limited by the terms of the Eleventh Amendment." [14] *Alden*, 527 U.S. at 713, 119 S.Ct. 2240; *see also Burnette v. Carothers*, 192

---

**13.** While the Eleventh Amendment confers immunity on State officials acting on behalf of the State, it does not confer immunity on State officials acting in violation of federal law. *Farricielli*, 215 F.3d at 245.

**14.** As the Supreme Court discussed in *Alden*, 527 U.S. at 715–21, 119 S.Ct. 2240, the Eleventh Amendment was adopted in response to the Supreme Court's decision in *Chisholm v. Georgia*, 2 U.S. 419, 2 Dall. 419, 1 L.Ed. 440 (1793), in which the Court held, just five years after the Constitution was adopted, that Arti-

cle III authorized a private citizen of another State to sue the State of Georgia without its consent. Congress reacted to this "unexpected blow to state sovereign," *Alden*, 527 U.S. at 720, 119 S.Ct. 2240, by adopting the Eleventh Amendment which was intended to restore, not to change, the original constitutional design. *Id.* at 721, 119 S.Ct. 2240. "By its terms, then, the Eleventh Amendment did not redefine the federal judicial power but instead overruled the Court." *Id.* at 722, 119 S.Ct. 2240.

F.3d 52, 55–56 n. 1 (2d Cir.1999), *cert. denied,* —— U.S. ——, 121 S.Ct. 657, 148 L.Ed.2d 560 (2000).

> Rather, as the Constitution's structure, its history, and the authoritative interpretations by this Court make clear, the States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today (either literally or by virtue of their admission into the Union upon an equal footing with the other States) except as altered by the plan of the Convention or certain constitutional Amendments.

*Alden,* 527 U.S. at 713, 119 S.Ct. 2240. In *Alden,* the Supreme Court held that sovereign immunity protected a non-consenting State from an action brought against it in State Court under the Fair Labor Standards Act. *See also In re Mitchell,* 209 F.3d 1111 (9th Cir.2000)(holding that an adversary proceeding in bankruptcy court by a Chapter 7 debtor against two State agencies, seeking to determine the dischargeability of a state tax debt, was barred by the Eleventh Amendment). Accordingly, our inquiry in this case is not constrained by the literal words of the Eleventh Amendment, which speak only of the "Judicial power of the United States." Instead, our analysis must encompass the broader, historical concept of sovereign immunity. As the Fourth Circuit held in *South Carolina State Ports Authority, Alden* makes clear that the States' sovereign immunity applies to adversarial proceedings brought by a private party against a non-consenting State, regardless of the forum. 243 F.3d 165, 2001 WL 243218, at *3. Thus, "[i]n short, unless waived or validly abrogated,[15] sovereign immunity bars the assertion or adjudication of claims made against a state by a private party and it protects a state from being required to appear and defend itself against such claims regardless of the forum in which those claims are made." *State of Rhode Island,* 115 F.Supp.2d at 274.

### 3. State Sovereign Immunity as a Bar to OSHA Proceedings

The OSHA Defendants argue that the question of the State's sovereign immunity never becomes an issue in this case because the OSHA proceedings are merely an investigation, not a judicial proceeding which would raise sovereign immunity concerns. On the other hand, the State maintains that the proceedings are adjudicative and that its sovereign immunity comes into play immediately upon a private party's filing an administrative complaint against the State. This, it argues, constitutes the commencement of an action against it, which it should not have to defend. The OSHA Defendants concede that the State is entitled to invoke its sovereign immunity from suit but assert that sovereign immunity is applicable only after the Secretary has determined that a violation has occurred, and one party seeks to enforce this determination in federal court. Thus, the OSHA Defendants rely on the distinction recognized in the *State of Ohio* decision

---

**15.** There are two well-settled exceptions to State sovereign immunity from private suits—when a State unequivocally waives its sovereign immunity and when there has been a valid abrogation by Congress of the States' sovereign immunity pursuant to its powers under the Fourteenth Amendment. *See Seminole Tribe of Florida,* 517 U.S. at 55, 65, 116 S.Ct. 1114. Neither exception is at issue in this case. At oral argument, counsel for the OSHA Defendants conceded that they were not claiming that the State had waived its immunity from suit, nor were they arguing that Congress, in enacting the employee protection provisions of the environmental statutes, had validly abrogated the States' sovereign immunity. (Tr. at 10.) Therefore, we need not address these issues.

between investigative and adjudicatory proceedings.

■ Like the District Court in the *State of Florida* case, we disagree with the OSHA defendants that a distinction can be drawn between the investigatory and adjudicative phases of the OSHA proceedings for purposes of sovereign immunity. *State of Florida*, at 1289–90; *see also South Carolina State Ports Authority*, 243 F.3d at 174 (rejecting this distinction in the context of proceedings before the Federal Maritime Commission). The *mandatory* investigation by OSHA was triggered by the filing of a private complaint, to which the State was asked to respond. The State is now presented with the Hobson's choice of responding to the complaint, in violation of what it believes to be its fundamental right of immunity from suit, or of not responding and facing a default judgment and an enforcement action. Requiring the State to defend itself against this private whistleblower complaint, even during the initial investigatory stages, offends its sovereign immunity from suit. "It is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent." *Seminole Tribe of Florida*, 517 U.S. at 54, 116 S.Ct. 1114 (quoting *Hans v. Louisiana*, 134 U.S. at 13, 10 S.Ct. 504). The historical notions of sovereignty contemplated that the States, "invested with the large residuum of sovereignty which had not been delegated to the United States," *Alden*, 527 U.S. at 748, 119 S.Ct. 2240, should not be summoned as defendants to answer the complaints of private persons. This "serves to avoid the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties." *Puerto Rico Aqueduct*, 506 U.S. at 146, 113 S.Ct. 684. Clearly, in this case, the State of Connecticut will be subjected to the coercive process of a federal administrative agency at the instance of a private party if the OSHA proceedings are not enjoined. Requiring the State to come in and defend itself against a private whistleblower complaint as part of a federal agency proceeding violates the State's right to immunity from suit just as surely as requiring the State to defend itself against a lawsuit filed in State or federal court.

The OSHA Defendants further assert that their proceedings cannot be considered "adjudicatory" because the Secretary of Labor lacks contempt power, which it characterizes as the "hallmark of judicial power." They argue that the purpose of Eleventh Amendment immunity was to protect the States from the coercive powers of the courts. We disagree that contempt power is the *sine qua non* of judicial power. Moreover, we find nothing in the Supreme Court's discussions of State sovereign immunity that would limit sovereign immunity to fora where a State could be held in contempt. Indeed, in this case, although OSHA may not have contempt powers per se, its powers are extensive and its order are subject to enforcement in the federal courts, which clearly have contempt powers. Thus, we reject this distinction urged by the federal defendants.

A review of the statutes and implementing regulations applicable to Rapkin's complaint against the State demonstrates that the proceedings are adjudicatory in nature and can result in an award of damages against the State in favor of a private individual. Under the statutes and regulations, the Secretary is required to investigate every complaint and make a determination as to whether a violation has occurred. The regulations give the Secretary the power "on a priority basis," to "enter and inspect such places and records, ... question persons being proceeded against and other employees of the charged employer, and ... require the

production of any documentary or other evidence deemed necessary to determine whether a violation of the law has been committed." 29 C.F.R. § 24.4(b). If the Secretary determines that there has been a violation, the Secretary *shall* issue a notice of determination which *shall* include an appropriate order to abate the violation. 29 C.F.R. § 24.4(d)(1). If either party seeks review of the order before an ALJ, after a public hearing and a determination that a violation has occurred, the ALJ *shall* issue a recommended order that the respondent take appropriate affirmative action to abate the violation, including reinstatement, back pay, and, if appropriate, compensatory damages. 29 C.F.R. § 24.7(c)(1). While the Secretary herself does not have contempt powers under the statute, her orders are subject to enforcement in the federal district courts. We find no basis for holding that State sovereign immunity from suit does not apply in this context because the Secretary herself lacks contempt powers under the statutes at issue.

Additionally, the fact that the State's invocation of its sovereign immunity from suit may shield it from private whistleblower complaints under the federal environmental laws does not compel a contrary finding. The *Alden* Court rejected "any contention that substantive federal law by its own force necessarily overrides the sovereign immunity of the States. When a State asserts its immunity to suit, the question is not the primacy of federal law but the implementation of the law in a manner consistent with the constitutional sovereignty of the States." 527 U.S. at 732, 119 S.Ct. 2240.

Moreover, this case does not concern the federal government's independent right to investigate the violation of federal laws by a State. Sovereign immunity would not shield the State from a suit by the United States for alleged· violations of the federal environmental statutes. *See State of Rhode Island*, 115 F.Supp.2d at 273.

In determining whether a proceeding is one in which a private party seeks to litigate its claim against a state or whether it is an action by the United States to enforce federal law, substance is more important than form. The determination turns on the nature of the proceeding, the relief sought and the role played by the governmental agency rather than on the forum in which the proceeding takes place or how the proceeding is characterized. The critical inquiry is whether the proceeding is one brought *by* the United States to investigate alleged violations of federal law and to compel compliance; or, whether it is one brought by a private party that seeks an award of damages or other relief against the state.

*Id.* at 274 (original emphasis).

In this case, it is clear that Rapkin's administrative complaints were filed by her individually, on her own behalf, seeking redress for alleged violations of the federal whistleblower statutes in the form of monetary and injunctive relief for herself and her family. These were not proceedings brought by the United States against the State of Connecticut to enforce federal environmental laws. Indeed, the DOL is not even a party to the proceedings. Rather, its role is to investigate and determine the private party's claims, order relief, and, if requested, provide an impartial ALJ to hear the claim in a public forum and to compile a record on which a federal enforcement action or appeal may be based.

We hold that the filing with OSHA of a whistleblower complaint by a private party against a State agency violates the State's sovereign immunity and that all OSHA

proceedings against the State relating to this private complaint, including its investigation, must be enjoined. As the Supreme Court held in *Alden,* the "principle of immunity from litigation assures the states and the nation from unanticipated intervention in the processes of government." 527 U.S. at 750, 119 S.Ct. 2240 (internal citations and quotations omitted). "When the States' immunity from private suits is disregarded, the course of their public policy and the administration of their public affairs may become subject to and controlled by the mandates of judicial tribunals without their consent, and in favor of individual interests." *Id.* (internal citations and quotations omitted). Sovereign immunity does more than protect the State's treasury from private money judgments. It also protects the State from the indignity of having to appear and defend its actions at the behest of private parties. Therefore, we find that all further OSHA proceedings against the State must be enjoined. To require the State to answer Rapkin's private complaint or to allow OSHA's investigation of this private complaint to proceed would violate the State's most fundamental constitutional right of sovereign immunity.

Accordingly, the Court holds that the State has carried its burden of showing a substantial likelihood of success on the merits and its entitlement to a preliminary injunction.

## CONCLUSION

For the foregoing reasons, the Plaintiff's Motion for Preliminary Injunction [Doc. #.6] is GRANTED. All further proceedings, including investigations, by Defendants against the State of Connecticut Department of Environmental Protection Agency relating to or arising out of Rap-

kin's OSHA complaints are hereby enjoined.

SO ORDERED.