356 F.3d 226
 State of CONNECTICUT DEPARTMENT OF ENVIRONMENTAL PROTECTION Plaintiff-Appellee,
v.
OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION, Charles N. Jeffress, Assistant Secretary of Labor for Occupational Safety and Health, Ruth E. McCully, Regional Administrator, Region 1, OSHA, and John J. Stanton, Jr., OSHA Area Director, and Anne Rapkin, Defendants-Appellants.
 Docket No. 01-6127.
 United States Court of Appeals, Second Circuit.
 Argued: April 24, 2003.
 Decided: January 22, 2004.
 
 Appeal from the United States District Court for the District of Connecticut, Gerard L. Goettel, J.
 Carla R. Walworth (Neil B. Stekloff, of counsel), Paul, Hastings, Janofsky & Walker LLP, Stamford, CT, for Plaintiff-Appellee.
 Michael Raab, Attorney, Appellate Staff, Civil Division, Department of Justice (Robert D. McCallum, Jr., Assistant Attorney General; John A. Danaher, III, United States Attorney; Mark B. Stern and Alisa B. Klein, Attorneys, Appellate Staff, Civil Division, Department of Justice, of counsel), Washington, DC, for Defendants-Appellants.
 Before: CALABRESI, F.I. PARKER,* and SACK, Circuit Judges.
 SACK, Circuit Judge.
 
 
 1
 The United States Occupational Safety and Health Administration ("OSHA") appeals from an order of the United States District Court for the District of Connecticut (Gerard L. Goettel, Judge), entered on April 23, 2001, enjoining OSHA from taking any steps to investigate or adjudicate an administrative complaint against the State of Connecticut Department of Environmental Protection ("State DEP"). The administrative complaint, filed by Anne Rapkin, an employee of State DEP, alleged that State DEP retaliated against her in violation of the whistle-blower provisions of the Clean Air Act, 42 U.S.C. § 7622, the Water Pollution Control Act, 33 U.S.C. § 1367, and the Solid Waste Disposal Act, 42 U.S.C. § 6971 (collectively the "whistle-blower provisions"). OSHA concedes that the district court's decision was correct insofar as it enjoined OSHA from holding a hearing to adjudicate the claim so long as OSHA is not itself a party to the proceedings. We agree and therefore, to that extent, affirm the order of the district court. OSHA contends, however, that the injunction swept too broadly insofar as it enjoined OSHA (1) from conducting an investigation based on the administrative complaint, and (2) from conducting an administrative adjudication in which it participates as a party. Again we agree and therefore, to that extent, reverse the order of the district court.
 
 BACKGROUND
 
 The Statutory Framework
 
 
 2
 The whistle-blower provisions prohibit an employer from terminating the employment of or discriminating in any other way against an employee because the employee filed, instituted, or caused to be filed or instituted any proceeding under the statutes to which the whistle-blower provisions relate, or testified or is about to testify in any proceeding resulting from the administration or enforcement of the employee-protection provisions of the statutes. See 33 U.S.C. § 1367(a), 42 U.S.C. § 6971(a), and 42 U.S.C. § 7622(a) (made applicable to the states by 33 U.S.C. § 1362(5), 42 U.S.C. § 6903(15), and 42 U.S.C. § 7602(e)). The United States Secretary of Labor (the "Secretary") has been given responsibility to implement those provisions. See 29 C.F.R. § 24.1(a). Part 24 of Subtitle A of Title 29 of the Code of Federal Regulations governs the Secretary's handling of discrimination complaints under the whistle-blower provisions.
 
 
 3
 Under the procedures provided by part 24, an employee who thinks that he or she has been discriminated against unlawfully may file with the Assistant Secretary for Occupational Safety and Health, United States Department of Labor (the "Assistant Secretary"), a complaint against a named respondent or respondents reflecting those allegations. See id. § 24.3. The Assistant Secretary must then notify the respondent or respondents and the appropriate office of the federal agency charged with the administration of the affected program that the complaint has been filed. See id. § 24.4(a). The Assistant Secretary must then conduct or cause to be conducted an investigation of the alleged violation. See id. § 24.4(b). During the investigation, the Assistant Secretary is permitted to "enter and inspect such places and records (and make copies thereof), ... question persons being proceeded against and other employees of the charged employer, and ... require the production of any documentary or other evidence deemed necessary to determine whether a violation of the law involved has been committed." Id. Within thirty days of receipt of the employee's administrative complaint, the Assistant Secretary must complete the investigation, determine whether a violation has occurred, and give notice of the determination to the persons involved. See id. § 24.4(d)(1). The notice of determination must contain a statement of reasons for the Assistant Secretary's findings and conclusions and, if the Assistant Secretary determines that the alleged violation has occurred, must include an appropriate order to abate the violation. See id.
 
 
 4
 Once the parties have received notification, any dissatisfied party may request a hearing before an administrative law judge ("ALJ"). If the request for a hearing is timely, the notice of determination of the Assistant Secretary becomes inoperative; it becomes operative again if the case before the ALJ is later dismissed. See id. § 24.4(d)(2). If a request for a hearing is not made or such a request is not timely, the notice of determination becomes the final order of the Secretary. See id. During the hearing, formal evidentiary rules do not apply, but the parties have the right to be represented by counsel, to file briefs, and to present oral argument. See id. §§ 24.6(d), (e). The Assistant Secretary may participate in the hearing as a party or as "amicus curiae." See id. § 24.6(f)(1). If the ALJ determines that a violation has occurred, he or she must issue an order requiring that the respondent take appropriate action to abate the violation. See id. §§ 24.7(a), (c)(1). The ALJ's decision becomes the final decision of the Secretary unless one of the parties files a petition for review with the Administrative Review Board (the "Board"). See id. § 24.7(d).
 
 
 5
 If a petition for review is timely filed, the recommended decision of the ALJ becomes inoperative unless and until the Board issues an order adopting the recommended decision. See id. § 24.8(a). The operative decision of either the ALJ or the Board is then subject to judicial review under the whistle-blower provisions. See 42 U.S.C. § 7622(c)(1), 33 U.S.C. § 1367(b), 42 U.S.C. § 6971(b).
 
 
 The Administrative Proceedings
 
 
 6
 On September 22, 1999, Anne Rapkin, then Chief Counsel for State DEP, filed a letter-complaint with OSHA alleging that State DEP had violated the whistle-blower provisions by taking away her duties and discriminating against her as a result of her having engaged in activity "protected under the employee protection provisions." Letter-complaint of Counsel for Rapkin to OSHA, at 1 (Sept. 22, 1999). The letter-complaint sought (1) an injunction prohibiting further State DEP harassment, intimidation, or retaliation; (2) the restoration of her former job and duties; (3) compensatory damages for mental anguish, pain, and suffering; and (4) attorney's fees.
 
 
 7
 In response to Rapkin's allegations, OSHA notified State DEP of Rapkin's filing and of the investigation it was initiating as a result. State DEP was asked to direct all documents in support of its position to the OSHA investigator assigned to the case. State DEP responded by requesting that the complaint be dismissed on sovereign immunity grounds.[1]
 
 
 8
 On November 15, 1999, OSHA denied State DEP's request for a dismissal. It notified State DEP that, instead, it had directed its regional office to continue the investigation.
 
 
 The Judicial Proceedings
 
 
 9
 On November 29, 1999, State DEP brought the instant action in the United States District Court for the District of Connecticut. It sought a declaratory judgment that the doctrine of sovereign immunity barred the OSHA investigation and an injunction ordering OSHA to cease and desist any further investigation, prosecution, or adjudication of the complaint. OSHA agreed not to investigate Rapkin's complaint until the district court ruled on State DEP's motion for declaratory and injunctive relief.
 
 
 10
 The district court agreed with State DEP, holding that Connecticut's sovereign immunity barred OSHA from further investigating or adjudicating Rapkin's complaint. It therefore granted State DEP's request for injunctive relief. See Conn. Dep't of Envtl. Prot. v. Occupational Safety & Health Admin., 138 F.Supp.2d 285, 297-98 (D.Conn.2001).
 
 
 11
 OSHA appealed. We stayed its appeal, however, while the United States Supreme Court reviewed a relevant decision of the Fourth Circuit, S.C. State Ports Auth. v. Fed. Maritime Comm'n, 243 F.3d 165 (4th Cir.2001). On May 28, 2002, the Supreme Court affirmed. Fed. Maritime Comm'n v. S.C. State Ports Auth., 535 U.S. 743, 122 S.Ct. 1864, 152 L.Ed.2d 962 (2002) ("Ports"). In response to that decision, OSHA has now abandoned that portion of its appeal contesting the injunction that prevents State DEP from being required to defend itself in a hearing before the OSHA ALJ to the extent that OSHA is not a party to the adjudication. OSHA continues to contend, however, that the injunction is overbroad insofar as it prohibits OSHA from investigating the claim and from choosing, based on that investigation, to intervene in the proceeding as a party. Based largely on our reading of Ports, we agree with OSHA on both points.
 
 DISCUSSION
 I. Standard of Review
 
 12
 "We review the district court's grant of a preliminary injunction for abuse of discretion, although we review its determinations of law de novo. If the District Court has based its decision on an error of law, it has ipso facto abused its discretion." New York Magazine v. Metro. Transp. Auth., 136 F.3d 123, 126 (2d Cir.) (citations omitted), cert. denied, 525 U.S. 824, 119 S.Ct. 68, 142 L.Ed.2d 53 (1998).
 
 Under well-settled principles:
 
 13
 In general, a district court may grant a preliminary injunction where the moving party establishes: (i) that it is likely to suffer irreparable injury if the injunction is not granted, and (ii) either (a) a likelihood of success on the merits of its claim, or (b) the existence of serious questions going to the merits of its claim and a balance of the hardships tipping decidedly in its favor. However, when the moving party seeks to stay governmental action taken in the public interest pursuant to a statutory or regulatory scheme, the injunction should be granted only if the moving party meets the more rigorous likelihood-of-success standard.
 
 
 14
 Beal v. Stern, 184 F.3d 117, 122 (2d Cir. 1999) (citations and internal quotation marks omitted).
 
 II. Preliminary Injunction
 
 A. Irreparable Harm
 
 
 15
 OSHA does not contest the district court's conclusion that State DEP would suffer irreparable harm absent the injunction. As the district court correctly observed, we have
 
 
 16
 held that the alleged violation of a constitutional right triggers a finding of irreparable injury. Jolly v. Coughlin, 76 F.3d 468, 482 (2d Cir.1996). Because violations of constitutional rights are presumed irreparable, Elrod v. Burns, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), "the very nature of [the State's] allegations" satisfies the requirement that it show irreparable injury. Bery[v. City of New York, 97 F.3d 689, 694 (2d Cir.1996), cert. denied, 520 U.S. 1251, 117 S.Ct. 2408, 138 L.Ed.2d 174 (1997).]
 
 
 17
 Conn. Dep't of Envtl. Prot., 138 F.Supp.2d at 291. We thus agree with the district court that, therefore, "the real issue in this case is whether the State has established a clear or substantial likelihood of success on the merits" of its sovereign immunity claim. Id.
 
 
 B. The OSHA Investigation
 
 
 18
 We are guided in this portion of our inquiry by the Supreme Court's decision in Ports, for which we stayed our consideration of the merits of this appeal. The Ports Court held that state sovereign immunity barred the Federal Maritime Commission (the "FMC") from adjudicating a private party's complaint against a nonconsenting state. Ports, 535 U.S. at 747, 122 S.Ct. 1864. In Ports, a ship operator had filed a complaint with the FMC alleging that the South Carolina State Ports Authority (the "Authority"), a state agency, had violated the Shipping Act of 1984, 46 U.S.C.App. § 1701 et seq., by repeatedly denying it permission to berth a cruise ship at a Charleston port. Id. at 747-48, 122 S.Ct. 1864. The operator sought both injunctive and compensatory relief. Id. at 748-49, 122 S.Ct. 1864. In accordance with the FMC's Rules of Practice and Procedure, the complaint was referred to an ALJ. Id. at 749, 122 S.Ct. 1864. The Authority responded by, inter alia, filing a motion to dismiss, alleging that it was entitled to sovereign immunity and therefore could not be required to appear before the ALJ. The Supreme Court agreed and concluded that state sovereign immunity barred the FMC from adjudicating a private party's complaint against a nonconsenting state.
 
 
 19
 The Ports Court explained that "[t]he preeminent purpose of state sovereign immunity is to accord States the dignity that is consistent with their status as sovereign entities." Id. at 760, 122 S.Ct. 1864. An "integral component" of that dignity is "immunity from private suits." Id. at 751-52, 122 S.Ct. 1864. While the FMC argued that Eleventh Amendment sovereign immunity was limited, as a literal reading of the text implies, "to any suit in law or equity," see U.S. Const. Amend. XI (emphasis added), the Supreme Court observed that "the sovereign immunity enjoyed by the States extends beyond the literal text of the Eleventh Amendment." Id. at 754, 122 S.Ct. 1864. To determine whether the Eleventh Amendment protected South Carolina from the administrative proceeding, the Supreme Court "examine[d] FMC adjudications to determine whether they are the type of proceedings from which the Framers would have thought the States possessed immunity when they agreed to enter the Union." Id. at 756, 122 S.Ct. 1864.
 
 
 20
 Subjecting a state to adjudication in proceedings brought by a private party in any forum, the Court continued, offends principles of sovereign immunity. See id. at 760, 122 S.Ct. 1864 ("Simply put, if the Framers thought it an impermissible affront to a State's dignity to be required to answer the complaints of private parties in federal courts, we cannot imagine that they would have found it acceptable to compel a State to do exactly the same thing before the administrative tribunal of an agency...."). When the proceeding "walks, talks, and squawks" like a lawsuit, sovereign immunity bars a private citizen from requiring the state's presence. Id. at 757, 122 S.Ct. 1864 (quoting S.C. State Ports Authority v. Fed. Maritime Comm'n, 243 F.3d at 174).
 
 
 21
 The Court catalogued the similarities between civil litigation in federal courts and the FMC administrative proceeding, noting in particular the similarities between an ALJ and a trial judge, the adversarial nature of both proceedings, their shared insulation from political influence, the similar rules governing the taking of evidence, and the parallels between FMC administrative procedures and the Federal Rules of Civil Procedure, id. at 756-59, 122 S.Ct. 1864, and concluded that "the similarities between FMC proceedings and civil litigation are overwhelming," id. at 759, 122 S.Ct. 1864. The Court explained that "[g]iven both th[e] interest in protecting States' dignity and the strong similarities between FMC proceedings and civil litigation,... state sovereign immunity bars the FMC from adjudicating complaints filed by a private party against a nonconsenting State." Id. at 760, 122 S.Ct. 1864.
 
 
 22
 The Court pointed out that this bar to administrative adjudications brought by a private citizen against a nonconsenting state did not foreclose the federal government from enforcing its laws. "Of course," the Court wrote, "the Federal Government retains ample means of ensuring that state-run ports comply with ... federal rules." Id. at 768, 122 S.Ct. 1864. The Court noted particularly that the federal government is not barred from investigating a claim or instituting adjudicative proceedings based on a private citizen's complaint. Id. at 768, 122 S.Ct. 1864 ("The FMC ... remains free to investigate alleged violations of the Shipping Act, either upon its own initiative or upon information supplied by a private party, and to institute its own administrative proceeding against a state-run port." (citations omitted)); see also id. at 768 n. 19, 122 S.Ct. 1864 ("[P]rivate parties remain perfectly free to complain to the Federal Government about unlawful state activity and the Federal Government remains free to take subsequent legal action." (citation and internal quotation marks omitted)). As the Court thus made clear, the fact that a private party's complaint triggers a dispute does not necessarily implicate a state's sovereign immunity. "The only step the FMC may not take, consistent with this Court's sovereign immunity jurisprudence, is to adjudicate a dispute between a private party and a nonconsenting State." Id.
 
 
 23
 OSHA concedes that, in light of Ports, it may not adjudicate Rapkin's complaint if it is not a party to the proceedings. OSHA contends, however, that it may investigate the complaint for the purpose of deciding whether to intervene in the action. OSHA argues that the prohibited "adjudication" is an ALJ hearing in which the federal government is not a party, not any earlier investigation. State DEP contends to the contrary that the process by which OSHA would investigate Rapkin's complaint and, perhaps, subsequently issue an order is itself an adjudication barred by principles of sovereign immunity under Ports.
 
 
 24
 We agree with OSHA. OSHA's investigation regarding the actions of State DEP is just that: an investigation, not an adjudication. Unlike the FMC proceeding at issue in Ports, the OSHA investigation does not involve any formal trial procedures. While there are some similarities between the OSHA investigation and a civil trial, the hallmarks of adjudication noted in Ports are missing: There is no neutral "trier of fact," id. at 757, 122 S.Ct. 1864, who is "functionally comparable" to a trial judge, id. at 756, 122 S.Ct. 1864; the proceedings are not "adversar[ial] in nature," id. at 757, 122 S.Ct. 1864; parties do not "present [their] case," whether by "oral or documentary evidence," nor can they engage in discovery, id. at 757-58, 122 S.Ct. 1864; and the procedure bears no resemblance to that required by the Federal Rules of Civil Procedure, let alone being "virtually indistinguishable" from it, id. at 758, 122 S.Ct. 1864. Unlike an adjudication, in which the parties drive the investigation of the case, in OSHA investigations, OSHA is in charge. It is OSHA, not the private citizen, that may enter and inspect places and records, question people, and require the production of any documents or other evidence it deems reasonable. See 29 C.F.R. § 24.4(b). Unlike the adjudication at issue in Ports, during the OSHA investigation, the State of Connecticut is not "required to defend itself in an adversarial proceeding against a private party before an impartial federal officer." Ports, 535 U.S. at 760-61, 122 S.Ct. 1864. In sum, the OSHA investigation is an investigation, of a materially different character than an adversarial trial. It does not "walk[ ], talk[ ], and squawk[ ] ... like a lawsuit." Id. at 757, 122 S.Ct. 1864 (citation and internal quotation marks omitted).
 
 
 25
 The First Circuit's opinion in Rhode Island Department of Environmental Management v. United States, 304 F.3d 31 (1st Cir.2002), is instructive. There, the court also considered the OSHA whistle-blower provisions. Even as it held that sovereign immunity barred OSHA from adjudicating a private claim, the court observed that its holding did not prevent OSHA from "receiving complaints, conducting its own investigations on such complaints, and making determinations as to liability under 29 C.F.R. § 24.4(d)(1)." Id. at 54 n. 13; see also Ohio EPA v. United States Dep't of Labor, 121 F.Supp.2d 1155, 1166-67 (S.D.Ohio 2000) (observing that "the Department of Labor is free to initiate a broad range of investigatory techniques to determine whether it should exercise discretion in pursuing a claim" and noting that "an investigation by employees of the agency in the form of taking of statements, subpoenaing documents, reviewing records and work sites, etc. is an act of an investigatory, rather than an adjudicatory, nature"). Indeed, we are aware of no court that has held that a state's sovereign immunity bars proceedings in which a possible whistle-blower violation — by "OSHA or otherwise —" was investigated in advance of an ALJ adjudication. Cf. Florida v. United States, 133 F.Supp.2d 1280, 1283, 1289 (N.D.Fla.2001) (concluding upon a request for injunction after the termination of the Assistant Secretary's investigation that the administrative adjudication was barred because it was "not a step in a Department of Labor investigation," which would, by implication, be permitted).
 
 
 26
 While an OSHA investigation may have repercussions for State DEP — if the Secretary determines that a violation has occurred, the Secretary "shall" issue an order awarding relief, 29 C.F.R. § 24.4(d)(1), and State DEP will be required to request a hearing if it wishes to make that order inoperative, see id. § 24.4(d)(2) — these collateral consequences are insufficient to transform an investigation into an adversarial adjudication akin to a civil trial.
 
 
 27
 We conclude that OSHA did not violate Connecticut's sovereign immunity by engaging in a preliminary investigation. Therefore, the injunction was overbroad insofar as it prevented OSHA from investigating Rapkin's claim.
 
 
 C. The OSHA Intervention
 
 
 28
 OSHA also contends that the injunction swept too broadly insofar as it enjoined OSHA from intervening as a party in a subsequent administrative adjudication. Again, we agree.
 
 
 29
 Ports affirms the long-standing principle that "States, in ratifying the Constitution, did surrender a portion of their inherent immunity by consenting to suits brought by ... the Federal Government." Ports, 535 U.S. at 752, 122 S.Ct. 1864. When the federal government becomes a party in an administrative adjudication, the adjudication is transformed from a prohibited suit by a private party against a state to a permitted one by the federal government against a state.
 
 
 30
 Ports explicitly notes the right of the government to "institute its own administrative proceeding against[ a state or its agencies]." Id. at 768, 122 S.Ct. 1864. Lower federal courts that have analyzed the issue have also concluded that proceedings under the whistle-blower statutes that would otherwise be barred by state sovereign immunity become permissible if the federal government is or becomes a party to the proceedings. See Rhode Island, 304 F.3d at 53-54 (holding that the inability of a private party to proceed in a federal administrative adjudication against a state does "not preclude the Secretary from intervening in the enjoined proceedings and removing the sovereign immunity bar"); Ohio, 121 F.Supp.2d at 1167-68 (stating that it would be "fundamentally unfair to terminate the administrative proceedings before the Department of Labor had an opportunity to exercise its discretion to intervene as a party"); Florida, 133 F.Supp.2d at 1290 ("[I]f, as would be its right, the Department of Labor determines to pursue this action on its own[,]... the Eleventh Amendment and constitutional sovereign immunity doctrine will pose no obstacle."). In addition, in proceedings not involving the whistle-blower provisions, the intervention of the United States as a party in a suit against a state has been held to render permissible a suit that would otherwise be barred by the doctrine of sovereign immunity. See, e.g., Mille Lacs Band of Chippewa Indians v. Minnesota, 124 F.3d 904, 912-14 (8th Cir. 1997) (holding that state sovereign immunity did not bar an Indian tribe's action against Minnesota because the United States had intervened and sought the same relief as the tribe) (discussed in Seneca Nation of Indians v. New York, 26 F.Supp.2d 555, 564 (W.D.N.Y.1998), aff'd, 178 F.3d 95 (2d Cir.1999), cert. denied, 528 U.S. 1073, 120 S.Ct. 785, 145 L.Ed.2d 662 (2000)).
 
 
 31
 Connecticut's sovereign immunity does not bar OSHA from intervening as a party in a case originally brought by a private citizen against a nonconsenting state agency. We therefore conclude that the injunction was overbroad insofar as it prevented OSHA from doing so.
 
 CONCLUSION
 
 32
 The injunction entered by the district court was overbroad in that it enjoined OSHA from investigating Rapkin's complaint, issuing the required order, and potentially intervening as a party in the subsequent administrative adjudication. We reverse the district court's order enjoining the defendants to the extent that it prohibited these constitutionally permissible actions. We affirm the district court's order insofar as it enjoined OSHA from conducting an administrative adjudication of claims against the State of Connecticut in proceedings to which OSHA was not a party.
 
 
 
 Notes:
 
 
 *
 The Honorable Fred I. Parker, who was a member of the panel, died following oral argument. The appeal is being decided by the remaining two members of the panel, who are in agreementSee 2d Cir. R. § 0.14(b).
 
 
 [1]
 It also sought dismissal based on its assertions that Rapkin's claims were time-barred and that she had failed to state a claim because she had not engaged in a protected activity